IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DOUGLAS STRONG,<br><br>                Petitioner,<br><br>        vs.<br><br>R.T.C. GROUNDS, Warden, Salinas Valley State Prison,[1]<br><br>              Respondent. | No. 2:13-cv-00457-JKS<br><br>MEMORANDUM DECISION |

Mark Douglas Strong, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Strong is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Salinas Valley State Prison.  Respondent has answered.  Strong has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Strong was charged with multiple sex offenses against F. and O., two 5-year-old children, including two counts of oral copulation with F. (counts 1 and 2), attempted oral copulation with F. (count 3), two counts of committing a lewd and lascivious act with F. (counts 4 and 5), attempted commission of a lewd and lascivious act with F. (count 6), oral copulation with O. (count 7), and two counts of committing a lewd and lascivious act with O. (counts 8 and 9). *People v. Strong*, No. C064081, 2012 WL 1885246, at *1-2 (Cal. Ct. App. May 23, 2012).  It was further alleged that Strong committed the offenses against two or more victims. *Id*. at *2.  A

---

[1]      R.T.C. Grounds, Warden, Salinas Valley State Prison, is substituted for P.D. Brazelton, former Warden, Pleasant Valley State Prison.  Fed. R. Civ. P. 25(c).  It appears that Brazelton's name was misspelled in the caption as "Brazelion."

jury convicted him of counts 1 through 6 and count 9 and found true the multiple victim

enhancement. *Id*. at *2. The jury found Strong not guilty on count 8 and could not reach a

verdict on count 7, and count 7 was subsequently dismissed. *Id*. The court sentenced Strong to a

term of 7 years on count 3, and two consecutive terms of 15 years to life on counts 1 and 9. *Id*.

On counts 2, 4, and 5, Strong was sentenced to concurrent terms of 15 years to life, and on count

6 was sentenced to a 3-year concurrent term. *Id*. Various fines and fees were imposed,

including a $10,000 restitution fund fine. *Id*.

Strong directly appealed through counsel, arguing that: 1) the trial court erred in denying

his motion to exclude the statements he made to Officer Galliano because he did not voluntarily

waive his right to counsel during the interview; 2) the trial court erred in prohibiting him from

cross-examining Galliano about Strong's interest in retaining an attorney, in that it infringed on

his ability to challenge the reliability of his confession at trial; and 3) his conviction for lewd and

lascivious conduct against O. (count 9) must be reversed because there was insufficient evidence

that he committed the act upon which the jury was instructed, and because he was convicted of

an act upon which the jury was not instructed. On May 23, 2012, the California Court of Appeal

affirmed Strong's judgment of conviction in a reasoned, unpublished opinion. *Strong*, 2012 WL

1885246, at *9.

Strong filed a counseled petition for review to the California Supreme Court, raising the

same arguments he raised in his unsuccessful appeal to the Court of Appeal. On August 29,

2012, the California Supreme Court denied review without comment. Strong filed his undated

Petition for Writ of Habeas Corpus with this Court on March 7, 2013.

## II. GROUNDS RAISED

In his *pro se* Petition to this Court, Strong raises the same three claims he unsuccessfully raised on direct appeal: 1) the trial court erred in denying his motion to exclude the statements he made to Officer Galliano because he did not voluntarily waive his right to counsel during the interview; 2) the trial court erred in prohibiting him from cross-examining Galliano about Strong's interest in retaining an attorney; and 3) his conviction for lewd and lascivious conduct against O. must be reversed because there was insufficient evidence that he committed the act upon which the jury was instructed, and he was convicted of an act upon which the jury was not instructed.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Strong has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

Claim one: invocation of right to counsel

Strong first argues that his waiver of the right to counsel was not voluntary because the interrogating officer "blocked [his] attempts to invoke that right." In resolving this claim on direct appeal, the Court of Appeal recounted the facts of the interrogation as follows:

> [Strong] was arrested and interrogated by Officer Galliano on March 20, 2009. The interrogation was audio taped. Galliano was the only officer present and was dressed in plain clothes. Although [Strong] was in custody, he was not handcuffed. The interview lasted approximately 30 minutes. Officer Galliano advised [Strong] of his *Miranda* rights, [and] [Strong] indicated he understood those rights and implicitly waived them.
>
> [Strong] initially denied any wrongdoing. Galliano left the room and pretended to view a nanny cam. When he returned, he told [Strong] that DNA test results were in and established his guilt. [Strong] then acknowledged F. liked to "snuggle and cuddle." The nanny cam and the DNA tests were ruses to encourage [Strong] to confess.
>
> Approximately eight minutes into the interrogation, as Galliano continued pressing [Strong], [Strong] stated "Perhaps I should retain a lawyer." Because [Strong] said this softly and while hunched over, Galliano thought [Strong] was talking to himself and his statement about counsel was ambiguous.
>
> Galliano left the room for about five minutes, to give [Strong] an opportunity to consider whether he wanted counsel. To clarify [Strong's] meaning, when he returned, Galliano readvised [Strong] of his right to an attorney and that one would be provided for him if he could not afford one. [Strong] interrupted Galliano, and said "Um, I don't know." Galliano responded by telling [Strong] not to interrupt him, "reminding him of his manners" and continuing to tell [Strong] he needed to hear [Strong's] side of the story. It did not appear to Galliano that [Strong] had been trying to invoke his *Miranda* rights at that time.
>
> The interrogation continued for approximately another 17 minutes. [Strong] did not mention an attorney again. He ultimately admitted he had exposed his penis to F. a couple of times and she had touched it three times in the last month. He got an erection after she touched his penis, but he did not ejaculate in front of her. He denied ever having her lick his penis, although he admitted asking her if she had ever licked a penis. He admitted he told F. not to tell her parents, because he felt guilty. He continued to deny anything happened with O.
>
> Prior to trial, [Strong] moved to exclude these statements, claiming they were obtained in violation of his *Miranda* rights and the court conducted an Evidence Code section 402 hearing on the matter. [Strong] acknowledged that since he did not invoke his *Miranda* rights after the first advisement, he had impliedly waived them. However, he argued his statements were not voluntary, as he had been compelled to make them

through "police intimidation, coercion or deception," in that "Galliano explicitly promised [him] that he would walk out of the interrogation room with his head held high if he confessed."[FN2]  He also argued that "as soon as [he] attempted to invoke his right to an attorney, Officer Galliano immediately told him to be quiet and let him finish. [Strong] never again attempted to invoke his right to an attorney, but became upset and distraught in the face of additional questioning."

> FN 2.  Strong does not renew this claim on appeal, accordingly the facts relevant to that claim are not recounted.

> Galliano testified at the Evidence Code section 402 hearing on the motion and the court listened to the audiotape of the interrogation.  The court found there were no overly coercive, deceptive or intimidating tactics used by Galliano.  The court found [Strong's] initial statement regarding a lawyer was not an unequivocal invocation of his right to an attorney.  The court also found [Strong's] claimed attempted invocation, when he interrupted Galliano while he was rereading [Strong] his rights, was not an attempted assertion of rights.  Rather, [Strong] "[was clearly] thinking about his rights, but it's also clear he is debating among his options in trying to decide whether he should talk or whether he should not talk.  He doesn't invoke his rights. Subsequently, in fact, he continues to talk afterwards."  Accordingly, the court denied the motion.

*Strong*, 2012 WL 1885246, at *3-4.

The Court of Appeal ultimately denied Strong relief, reasoning as follows:

> "'In reviewing *Miranda* issues on appeal, we accept the trial court's resolution of disputed facts and inferences as well as its evaluations of credibility if substantially supported, but independently determine from undisputed facts and facts found by the trial court whether the challenged statement was legally obtained.' (*People v. Smith* (2007) 40 Cal. 4th 483, 502.)" (*People v. Martinez* (2010) 47 Cal. 4th 911, 949.)  "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'. . . ." (*Colorado v. Connelly* (1986) 479 U.S. 157, 167 [93 L. Ed. 2d 473, 484].)  But, the ultimate question in determining whether a confession is voluntary, is whether the defendant's free will was overcome by coercive police activity.  (*People v. Williams* (2010) 49 Cal. 4th 405, 436; see also *People v. Massie* (1998) 19 Cal. 4th 550, 576; *Lynumn v. Illinois* (1963) 372 U.S. 528, 534 [9 L. Ed. 2d 922, 926].)  Such coercive activity may come in the form of threats, violence, direct or implied promises, or the exertion of improper influence.  (*People v. Maury* (2003) 30 Cal. 4th 342, 404.)
> [Strong] does not argue that the coercive activity here came in the form of threats, violence, promises or the exertion of improper influence.  Rather, he acknowledges he never made "an unambiguous or unequivocal request for counsel after initially waiving" his *Miranda* rights, but argues that is because he was prevented from doing so by Galliano.  Specifically, he contends that "Galliano intentionally cut [him] off so that he could not invoke his right . . .  [¶]  In short, Galliano prevented [him] from invoking his

right to counsel by making it clear that any attempt to invoke would be overridden and ignored."  [Strong] contends under these circumstances his waiver of his right to counsel was not voluntary.  We disagree with [Strong's] view of the record and find no error in the denial of the motion to exclude his statements.

[Strong] notes he has found no cases that support his argument, but claims "it is self-evident that a waiver cannot be voluntary if it was blocked by the police."<sup>FN3</sup>  We do not agree that this case represents a situation in which the police intentionally blocked an attempted assertion of rights.

> FN 3.  We presume [Strong] meant to argue that a waiver cannot be voluntary if the invocation of rights is blocked by the police.

The trial court found [Strong's] statement "Um, I don't know" was not an attempted assertion or the beginning of an assertion of rights.  Rather, the statement was a reflection that [Strong] was "thinking about his rights", "debating among his options in trying to decide whether he should talk or whether he should not talk."  Based on our review of the transcript and Officer Galliano's testimony, we find substantial evidence supports the trial court's conclusion.

Furthermore, we cannot agree that Galliano's actions prevented [Strong] from invoking his rights or that, under these circumstances, Galliano's response made "it clear that any attempt to invoke would be overridden and ignored."

[Strong] initially made an ambiguous statement when he said "Perhaps I should retain a lawyer."  Galliano stopped the interview, to give [Strong] a chance to consider whether he wanted an attorney and returned five minutes later to clarify whether [Strong] wanted counsel.  He began to readvise [Strong] of his right to counsel when [Strong] interrupted him and said "Um, I don't know."  Galliano then told [Strong] not to interrupt him and continued the interrogation.  Given the ambiguity of the request, coming after a knowing and voluntary waiver, neither statement made by [Strong] required Galliano to seek clarification or stop the interrogation.  (*Davis v. United States* (1994) 512 U.S. 452, 459-462, [129 L. Ed. 2d 362, 371-373]; *People v. Williams, supra,* 49 Cal. 4th at pp. 432-433.)  Thus, the one time [Strong] actually mentioned an attorney, Galliano did more than required of him under the law, stopped questioning [Strong], gave him time to think about the matter and readvised him of his rights.  Galliano's response was not, on its face, threatening or improperly influential.  It was not the sort of response which would ordinarily be sufficient to overcome a person's will, and there was no evidence that [Strong's] will was actually "overborne" by virtue of Galliano's actions.  Accordingly, we cannot find that Galliano's response to [Strong's] statement rendered his waiver of rights involuntary.  The trial court properly denied the motion to exclude.

*Id*. at *4-5.

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court held

that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming

from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  Under this rubric, an interrogating officer must first advise the potential defendant that he or she has the right to consult with a lawyer, the right to remain silent and that anything stated can be used in evidence against him or her prior to engaging in a custodial interrogation.  *Id.* at 473-74.

A defendant may waive his *Miranda* rights so long as the waiver is "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986). However, an express waiver of *Miranda* rights is not necessary.  *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010); *N. Carolina v. Butler*, 441 U.S. 369, 373 (1979) (waiver of *Miranda* rights can be inferred "from the actions and words of the person interrogated").  The Supreme Court has explained:

> Interrogation provides the suspect with additional information that can put his or her decision to waive, or not to invoke, into perspective.  As questioning commences and then continues, the suspect has the opportunity to consider the choices he or she faces and to make a more informed decision, either to insist on silence or to cooperate.  When the suspect knows that *Miranda* rights can be invoked at any time, he or she has the opportunity to reassess his or her immediate and long-term interests.  Cooperation with the police may result in more favorable treatment for the suspect; the apprehension of accomplices; the prevention of continuing injury and fear; beginning steps towards relief or solace for the victims; and the beginning of the suspect's own return to the law and the social order it seeks to protect.
> . . .
> In making its ruling on the admissibility of a statement made during custodial questioning, the trial court, of course, considers whether there is evidence to support the conclusion that, from the whole course of questioning, an express or implied waiver has been established. Thus, after giving a *Miranda* warning, police may interrogate a suspect who has neither invoked nor waived his or her *Miranda* rights.

*Berghuis*, 560 U.S. at 388; *see also Davis v. United States*, 512 U.S. 452, 458 ("If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him.").

If a suspect who has waived his *Miranda* rights later requests counsel during a police interrogation, he is not subject to further questioning until an attorney has been made available or the defendant reinitiates the conversation. *Davis*, 512 U.S. at 458. But the cessation of questioning is not required where "a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Id*. at 459. Rather, the suspect "must unambiguously request counsel." *Id*. He must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. If the statement by the suspect is insufficiently clear, the police may continue their questioning. *Id*.

Additionally, the Due Process Clause forbids the use of a defendant's confession if it is obtained through police coercion. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Brown v. Mississippi*, 297 U.S. 278, 285-86 (1936). "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda*, 384 U.S. at 444). A confession is involuntary if coerced "either by physical intimidation or psychological pressure." *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (citation omitted). The question is therefore whether the defendant's will was overborne by the circumstances surrounding the giving of the confession. *United States v. Preston*, 751 F.3d

1008,  (9th Cir. 2014); *see also Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991) (confession was coerced where there was a credible threat of physical violence if defendant did not confess)*; Henry v. Kernan*, 197 F.3d 1021, 1026-27 (9th Cir. 1999) ("The test of voluntariness is well established: 'Is the confession the product of an essentially free and unconstrained choice by its maker?'" (citation omitted)).

The Court of Appeal's determination that the trial court did not err in ruling that Strong's statements to Officer Galliano were admissible is not contrary to federal law.  Rather, a reasonable court could find that Strong's statements that "[p]erhaps [he] should retain . . . [a] lawyer," and "[u]m, I don't know," were not unequivocal requests for counsel requiring police questioning to cease, especially in light of Officer Galliano's testimony that Strong appeared to be hunched over and speaking to himself when he made the initial statement referencing counsel. *See Davis*, 512 U.S. at 459 ("Maybe I should talk to a lawyer" was not an unequivocal request for counsel requiring questioning to cease); *but see Edwards v. Arizona*, 451 U.S. 477, 479, 484-85 (1981) (defendant was not subject to further police questioning until counsel had been made available to him where he stated "I want an attorney before making a deal").  And, as the Court of Appeal noted, under United States Supreme Court precedent, Officer Galliano was not required to ask Strong to clarify his statements in order to ascertain if he was, in fact, attempting to invoke his right to counsel.  *Davis*, 512 U.S. at 461.  Although trial courts might disagree as to whether Officer Galliano's interruption was in fact a deliberate tactic used to prevent Strong from effectively invoking his right to counsel, the Court of Appeal's determination that Galliano did not overcome Strong's will was not unreasonable given that Strong has pointed to no case

law holding that an interruption amounts to coercion and he continued to speak with the officer,

never again referencing an interest in counsel.  Strong therefore cannot prevail on this claim.

Claim two: cross-examination of Officer Galliano

Strong next argues that he was impermissibly prohibited from cross-examining Officer

Galliano about his interest in retaining an attorney.  The California Court of Appeal recounted

the fact of this claim as follows:

> During cross-examination of Galliano, defense counsel asked "Now at one point
> . . . [Strong] started to talk about retaining an attorney, correct?"  The prosecutor
> objected on the grounds of relevance and an off the record sidebar conference was held.
> The objection was sustained.  The court then allowed counsel to continue with a thorough
> cross-examination of Galliano on the circumstances surrounding the confession,
> including: Galliano's background and experience in interrogations; the physical
> environment of the interrogation room; and, Galliano's interrogation tactics and
> techniques, such as building a rapport with the suspect, being confrontational with the
> suspect, taking breaks, employing ruses, and perpetuating deceptions.  Defense counsel
> emphasized the numerous times Galliano interrupted [Strong] throughout the
> interrogation.  Defense counsel also explored [Strong's] emotional state during the
> interrogation.
>
> [Strong] also testified about the circumstances under which he confessed,
> including his mental condition at the time, his emotional state in the interrogation room,
> his confusion during the interrogation, and the physical environment of the room.  He
> also explained what he had intended by his statements, the meaning of which was
> confused when Galliano kept interrupting him.
>
> In addition to this evidence of the circumstances surrounding the confession, the
> court admitted as exhibits both the transcript and the audio recording of the confession.
> The transcript and recording reflect that [Strong] mentioned retaining an attorney and the
> responses that followed.

*Strong*, 2012 WL 1885246, at *5.

The Court of Appeal denied Strong relief on this claim:

> Relying on *Crane v. Kentucky* (1986) 476 U.S. 683, [90 L. Ed. 2d 636] (*Crane*),
> [Strong] contends the trial court's error in sustaining the objection to cross-examination
> of Galliano on the issue of [Strong] mentioning retaining an attorney infringed on his
> ability to have a meaningful opportunity to present his defense, specifically, to challenge
> the reliability of his confession at trial.  He further argues the trial court's "ruling reflects

a misunderstanding between a confession's voluntariness, a decision for the court, and its reliability, a decision for the jury."  Neither argument is persuasive.

Crane was a murder case which rested largely on the confession of a 16-year-old boy under oppressive circumstances.  The defense wanted to challenge the reliability of the confession utilizing internal inconsistencies and the circumstances under which the confession was obtained.  Finding the circumstances surrounding the confession were relevant only to the issue of voluntariness, the trial court excluded all evidence on that point.  (Crane, supra, 476 U.S. at pp. 686-687, [90 L. Ed. 2d at pp. 642-643].) Reversing, the United States Supreme Court made clear "the requirement that the court make a pretrial voluntariness determination does not undercut the defendant's traditional prerogative to challenge the confession's reliability during the course of the trial."  (Id. at p. 688 [at p. 643].)  The Court went on, "the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence.  Confessions, even those that have been found to be voluntary, are not conclusive of guilt.  And, as with any other part of the prosecutor's case, a confession may be shown to be 'insufficiently corroborated or otherwise . . . unworthy of belief.'"  (Id. at pp. 688-689, [90 L. Ed. 2d at p. 644].)  Accordingly, the Court found a "blanket exclusion" of evidence related to the circumstances of the confession is error because it deprives the defendant of a meaningful opportunity to present a complete defense.  (Id. at pp. 690-691 [at p. 645].)

Unlike in Crane, in this case, there was no blanket exclusion of the circumstances surrounding the confession.  To the contrary, defense counsel thoroughly explored the circumstances surrounding the interrogation on both cross-examination of Galliano and direct examination of [Strong].  This exploration included Galliano's experience, the techniques and tactics he used, the physical environment of the room, and [Strong's] mental and emotional condition.  Moreover, the transcript and recording of the interrogation itself were introduced into evidence.  These reflected the specific statement made by [Strong] regarding an attorney and Galliano's responses.  Thus, the very evidence [Strong] sought to get before the jury through cross-examination of Galliano, the circumstances surrounding his purported invocation of his right to an attorney was, in fact, before the jury.

Contrary to [Strong's] claim that the trial court misunderstood the distinction between a confession's voluntariness and its reliability, the record before us does not reveal any such misunderstanding.  The discussion regarding the objection was off the record.  It is [Strong's] burden, as the appellant, to affirmatively demonstrate error on the record.  (People v. Sanghera (2006) 139 Cal. App. 4th 1567, 1573.)  He has not met this burden.  Moreover, as noted above, the issue of the confession's reliability was thoroughly explored and put before the jury.  This suggests the trial court was fully aware of the distinction between voluntariness and reliability.

Defense counsel argued extensively that his client's confession should be disregarded as the product of a police officer's lies and psychological manipulation of a man suffering from posttraumatic stress disorder, manic depression and bipolar.  The jury was provided with ample evidence of the circumstances surrounding the confession, including the transcript and audio recordings, which contained the very information

-12-

[Strong] now complains the jury did not have.  On this record, [Strong] was in no way precluded from challenging the reliability of his statements to the police and no prejudice could have arisen from any error in sustaining the objection to his cross-examination.

*Id*. at *5-6.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted); *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009).  Strong's confrontation claim must ultimately fail because, as the Court of Appeal noted, in contrast to *Crane*, he was not prevented from challenging the reliability of his confession by extensively cross-examining Officer Galliano about the circumstances surrounding his interrogation and introducing the transcripts and audio recoding of the interrogation.  In particular, defense counsel questioned Officer Galliano about the fact that he interrupted Strong on multiple occasions and his motivation for doing so.  The state court's rejection of Strong's confrontation claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on this claim.

Claim three: insufficient evidence/instructional error

Lastly, Strong argues that "[t]here was insufficient evidence that [he] committed the act upon which the jury was instructed, and because [he] was convicted of an act upon which the jury was not instructed."  On direct review, the Court of Appeal recounted the facts and resolved this claim as follows:

[Strong] next contends his conviction for lewd and lascivious conduct against O. (count 9) must be reversed for insufficient evidence.  Specifically, he argues reversal is

required because there was insufficient evidence that he "committed the act upon which the jury was instructed, and because he was convicted of an act upon which the jury was not instructed."  Although he positions his argument as a sufficiency of the evidence claim, [Strong's] claim, in fact, comes down to a claim that the jury was misinstructed. While [Strong] is correct, the jury was misinstructed, the correct information and the verdict forms make clear that the jury made the findings necessary to support the conviction.  Accordingly, the real issue is whether the erroneous instruction vitiates the conviction where the verdict form and the charging document were correct.  It does not.

### Background

As to O., [Strong] was charged with one count of oral copulation (count 7) and two counts of committing a lewd and lascivious act (counts 8 and 9).  Count 8 was described in the information as [Strong] causing the victim to place his hand on [Strong's] penis and count 9 was described as [Strong] touching O.'s penis.  The instructions on committing a lewd and lascivious act stated, "To prove that the defendant is guilty of this crime, the People must prove that: 1. The defendant willfully caused a child to touch his own body, the defendant's body, or the body of someone else either on the bare skin or through the clothing; 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; and 3. The child was under the age of 14 years at the time of the act."  The instruction as given erroneously did not state that [Strong] could be convicted of lewd and lascivious conduct against O. based on [Strong] touching O.'s penis.

### Analysis

[Strong] relies on *People v. Curtin* (1994) 22 Cal. App. 4th 528, 531 (*Curtin*) and *People v. Beasley* (2003) 105 Cal. App. 4th 1078 (*Beasley*) to support his claim that reversal of a conviction is required if the defendant is found guilty on the wrong theory. *Curtin* and *Beasley* are distinguishable from this case.

In *Curtin,* the defendant was charged with grand theft and convicted of grand theft on a theory of larceny by trick or device.  At the time, the various theft offenses had been consolidated into a single statute, but the elements remained distinct.  (*Curtin, supra,* 22 Cal. App. 4th at p. 531.)  On appeal, defendant argued his conviction could not stand because the evidence was insufficient to establish a theft by trick or device on that theory. He argued that the crime committed was theft by false pretenses.  (*Id.,* at pp. 530-531.)  In reversing the conviction, the court stated "While a general verdict of guilt may be sustained on evidence establishing any one of the consolidated theft offenses [citation], the offense shown by the evidence must be one on which the jury was instructed and thus could have reached its verdict.  [Citation.]  Thus, in this case, if the elements of theft by trick were not proven, the conviction cannot be affirmed on the ground the evidence showed defendant's guilt of false pretenses, *which has additional required substantive elements, as well as a special corroboration requirement,* upon which the jury was not instructed."  (*Id.* at p. 531, italics added.)  That is, "*Curtin* reversed a theft conviction because the instruction as to larceny by trick required the presence of evidence which did not exist in the record, and there was insufficient evidence of corroboration to sustain the

-14-

conviction on a theory of false pretenses." (*People v. Counts* (1995) 31 Cal. App. 4th 785, 791.)  Furthermore, even if there had been "sufficient evidence in the record to support the additional elements required for theft by false pretenses, the jury was not instructed on the latter offense and therefore had no occasion to determine if the additional elements had been proved beyond a reasonable doubt." (*People v. Beaver* (2010) 186 Cal. App. 4th 107, 125.)

In *Beasley,* after hitting the victim with a broomstick, and punching and kicking her head and back, the defendant was charged with and convicted of violating section 245, subdivision (a)(1), assault with a deadly weapon or by means likely to cause great bodily injury.  (*Beasley, supra,* 105 Cal. App. 4th at pp. 1086-1087.)  Hands and feet do not constitute deadly weapons and the jury was not instructed on assault by means likely to cause great bodily injury. Accordingly, the conviction had to rest on whether the broomstick constituted a deadly weapon.  (*Id.* at p. 1087.)  However, the record did not contain evidence supporting a finding that the broomstick was a deadly weapon.  The broomstick was not shown to the jury.  There were no photographs of the broomstick, no evidence of its composition, weight, or rigidity.  Neither the stick itself nor photographs of it were introduced in evidence.  Because the jury had no evidence as to the broomstick before it, it could not have determined that a broomstick was a deadly weapon.  Accordingly, there was insufficient evidence to support the conviction.

In both *Curtin* and *Beasley* the defendants were charged under statutes that included multiple offenses with distinct elements.  The juries were instructed, however, only on one of the offenses contained within the statute.  While the evidence in the record might have supported a conviction on the other offenses within the statute, because of the lack of instruction, the jury had no occasion to consider them, and there was no indication in the record that the jury had considered them.

Here, [Strong] was charged under a statute which includes only one offense, lewd and lascivious conduct with a child.  This offense is committed "by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child."  (*People v. Martinez* (1995) 11 Cal. 4th 434, 452.)  This is the offense for which [Strong] was convicted.  A jury finding that [Strong] touched O.'s penis with the intent to sexually arouse [Strong] would support [Strong's] conviction under section 288, subdivision (a). (*Id.,* at pp. 444-45.)

Unlike *Curtin* and *Beasley,* in this case, there was evidence to support the conviction.  More specifically, there was evidence that [Strong] committed this offense by touching O.'s genitals.  O. told both [his mother], Officer Galliano and the SAFE interviewer that [Strong] had touched his genitals.  Furthermore, the record indicates the jury actually considered this evidence and found it true beyond a reasonable doubt.  The information specifically alleged [Strong] touched O.'s genitals.  Both the prosecutor and defense counsel's closing arguments discussed the offense including [Strong] touching O.'s genitals.  The jury verdict form for count nine specifically reflected a finding by the jury that [Strong] had touched O.'s genitals.  Accordingly, in this case the jury had both evidence supporting the claim that [Strong] touched O.'s genitals *and* occasion to determine the issue.  This distinction removes the instant case from the holdings of *Beasely* and *Curtin.*

-15-

The error here is not a substantial evidence error, but an instructional error. Although the instruction given as to count nine was clearly flawed, we find the error was not prejudicial.

Instructions omitting or misdescribing an element of an offense are subject to harmless error analysis under the test of *Chapman*.[FN4]  (*See People v. Flood* (1998) 18 Cal. 4th 470, 503-507.)  Under this test, the question for the reviewing court is "not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.  [Citation.] . . . Harmless-error review looks . . . to the basis on which 'the jury *actually* rested its verdict.'  [Citation.]  The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279 [124 L. Ed. 2d 182, 189]; see also *In re Lucero* (2011) 200 Cal. App. 4th 38, 48.)  "If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary . . . [then], the erroneous . . . instruction was harmless."  (*People v. Sarun Chun* (2009) 45 Cal. 4th 1172, 1204-05; see also *California v. Roy* (1996) 519 U.S. 2, 7, [136 L. Ed. 2d 266, 272].)

FN 4.  *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L. Ed. 2d 705].)

By way of the information, evidence, argument and verdict forms, the question of whether [Strong] touched O.'s genitals was put squarely before the jury to determine. The verdict form makes clear the jury found beyond a reasonable doubt [Strong] committed that act.  There is no reasonable doubt that the jury considered the issue and made the necessary findings to support the verdict.  Accordingly, the verdict in this case was unattributable to the instructional error and the error was harmless.

*Strong*, 2012 WL 1885246, at *7-9.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the

law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. at 73 (citation omitted). Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* at 156-57; *Estelle*, 502 U.S. at 72.

As the Court of Appeal noted, the instruction given was erroneous in that it did not state that Strong could be convicted of lewd and lascivious conduct against O. based on Strong touching O.'s penis. Nevertheless, the error was harmless. Count 9 charged Strong with committing a lewd and lascivious act against O. by touching his penis in violation of California, and the jury specifically found Strong guilty of Count 9 as set forth in the information after hearing testimony and argument as to whether Strong touched O.'s genitals. The issue was squarely before the jury, and the jury found beyond a reasonable doubt that Strong had in fact

-17-

touched O.'s genitals.  Thus, there is no reasonable possibility that the erroneous instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

V. CONCLUSION AND ORDER

Strong is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 28, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge